# MARYLAND REPORTS.

## DECEMBER TERM, A. D., 1860.

---

## CHARLES C. McTAVISH *vs.* CHARLES CARROLL.

In an action for damages for obstructing a right of way for repairing a mill-race, the declaration alleged that the obstruction prevented the repair of the race, whereby the mill became idle and could not be worked, and the plaintiff lost the custom and trade thereof, "and the use of the same for grinding his own grain, and was therefore, at great expense, obliged to carry it to other mills." HELD:

That under this declaration, evidence that the plaintiff was owner of a large body of land around his mill, and was accustomed to grind his grain raised thereon at this mill, for his cattle, horses, hands and family, and in consequence of its stoppage, he had been compelled to carry his grain to another mill, at a greater distance, is admissible.

This court cannot reverse a ruling of the court below, admitting a deposition in evidence, when that deposition does not appear in the record: in such a case this court *must assume* that the deposition was properly admitted in evidence.

The plaintiff had the right to the use of a road over the defendant's land along a mill-race, not for *ordinary purposes*, but only as occasion required to repair the *race* or *dam*. This road was obstructed by a fence which was afterwards removed or modified so as not to interfere with the *reasonable* enjoyment of such right. HELD:

That the plaintiff could not recover for any alleged damage to his mill occurring subsequently to such removal or modification, or after the fence was made easily removable, and he was notified by the defendant that the latter would remove the same whenever he should be requested to do so.

APPEAL from the Circuit Court for Howard county.

*Trespass on the case,* brought on the 4th of March 1856,

by the appellee against the appellant, for obstructing a road or right of way over the defendant's land, from the plaintiff's mill to his mill-dam, by the side of the mill-race, which the plaintiff alleged he was entitled to use for the purpose of repairing said race.

A previous suit, brought on the 26th of August 1852, for the same obstruction, will be found reported in 7 *Md. Rep.*, 352, and 13 *Md. Rep.*, 429, in which damages were claimed from the time of the obstruction, in March 1852, and in the present suit damages are claimed from the 27th of August 1852. The averments of the declaration are sufficiently stated in the opinion of this court. Plea, *non cul.*

1*st Exception.* After offering the title deeds under which the parties respectively claimed, (the same as stated in the previous reports,) and giving evidence of the nature and extent of the obstruction, the plaintiff then offered to prove that he was the owner of a large body of land around said mill, and that he was accustomed to grind his grain raised on said land at said mill, for his cattle and horses, as well as for the use of his hands and family, and that in consequence of the stoppage of said mill, he had been compelled to carry his grain to another mill, at a greater distance. To the admissibility of this evidence the defendant objected, but the court (Brewer, J.) overruled the objection, and allowed the evidence to go to the jury, and to this ruling the defendant excepted.

2*nd Exception.* After giving further evidence of the continuance of the obstruction, the plaintiff offered the deposition of Cecil, (which is not in the record,) and the defendant objected to the admissibility of a part thereof, which objection the court overruled, and the defendant excepted.

3*rd Exception.* Further evidence was then offered on both sides, as to the nature, character and extent of the obstruction and other matters, as stated in the following prayers:

*Plaintiff's prayer:* That if the jury find the deeds given in evidence, and that the plaintiff took possession of the mill upon the property granted to him by the deed of his grandfather, in 1832, and remained in the possession and use

thereof ever since; and if the jury find from the evidence that there was a dam upon the adjoining land of Mrs. Mc-Tavish, and a race running in part through said land to the mill of the plaintiff, to supply it with water for grinding; and if the jury find that the said land of Mrs. McTavish and of the plaintiff belonged to Charles Carroll of Carrollton before his death, and that during his life time and for a considerable period before his death, he used the said mill, so obtaining his supply of water for milling purposes through the channel of said race, and was accustomed to use the north-western bank for his wagons, carts and hands, as a roadway to clear out the bed and repair the banks of said race, that it might the better and more freely conduct the water from the dam to the mill; and if the jury find that after the death of his grand-father, in November 1832, the plaintiff entered upon the land contained in his said deed, and possessed and enjoyed it, with the mill thereon erected, and the dam, race and road or way along the north-west branch of said race, as appurtenances thereto, in the same way his grand-father had done in his life time, and if the plaintiff from November 1832, continued in peaceable and quiet possession, enjoyment and use of said land and appurtenances for upwards of nineteen years, and until the month of March 1852; and if the jury find from the evidence that in this month the defendant erected or caused to be erected a post and rail fence upon and along the north-western bank of said race, which obstructed the plaintiff in a reasonable enjoyment and use of said bank as a roadway upon which to enter for the purpose of cleaning out the bed and repairing the banks of said race, and that for a division fence it might as well or nearly as well have been placed on the south-east side or bank of said race, then the plaintiff is entitled to recover.

*Defendant's prayer:* That if the jury shall find that in the spring or early part of the summer of 1852, the defendant did order his manager to take down the fence which had been before that time and in the same spring erected by order of the defendant alongside of the plaintiff's race, as given in evidence by the witnesses, and to put it up again in such a

way that the rails could be taken out like bars, and at the time of giving said order it was to be put up so as the plaintiff could get at his race, and that the said manager did take down said fence, and did point the rails so that they might be taken out as bars, and that the fence was then put up again; and if they believe the testimony of Gaither and Dorsey, in relation to the said fence and its character, and the facility with which it could be removed, and that on the 29th of July 1852, the said manager, by order of the defendant, carried a message from the defendant to the plaintiff, to the effect that the plaintiff might take down the fence whenever he wanted to repair his race, or if he would give the said manager notice, he would take the fence down for him, then the plaintiff will not be entitled to their verdict for any damages which may be claimed as sustained by the plaintiff by reason of the erection of said fence.

The court granted the plaintiff's and rejected the defendant's prayer, and to this ruling the defendant excepted. The verdict was in favor of the plaintiff for $700 damages, and the defendant appealed.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

*Oliver Miller* and *Thos. S. Alexander*, for the appellant, argued:

1st. That the evidence objected to in the first exception was inadmissible, as its only object was to influence the damages, and the matter of aggravation sought to be proved is not covered by the declaration. It comes within the principle decided in 13 *Md. Rep.*, 429.

2nd. There was error in granting the prayer of the appellee; 1st, because it overlooks or ignores the facts proved by the defendant, and which, being proved, constituted a bar to the plaintiff's recovery within the opinion of this court, as expressed in 7 *Md. Rep.*, 366, 367. 2nd, because it entitled the plaintiff to the verdict, in the event of the jury finding that the fence supposed to have been erected in March 1852,

"obstructed the plaintiff in a *reasonable* enjoyment and use of said bank as a roadway," and is therefore inconsistent with the ruling of this court in 7 *Md. Rep.*, which required the plaintiff, in order to entitle him to recover, to show, 1st, a necessity existing for the use of the roadway, and 2nd, a material obstruction to such use.

3rd. There was error in refusing the appellant's prayer, because it is expressly covered by the opinions in 7 *Md. Rep.*, 366, and 13 *Md. Rep.*, 441.

*Grafton L. Dulany*, for the appellee, argued:

1st. That the ruling in the first exception was correct. The use made by the appellee of the mill, and the manner thereof, was a part of the history of the case, and with the other facts in the cause, contribute to shed light upon the motives of the appellant, and enable the jury properly to estimate the conduct of the appellant, and the character of the case, with a view to fix the damages. And, besides, the allegations of the present declaration are broader than those in the previous case, in 13 *Md. Rep.*, and cover just such evidence as this.

2nd. That the court was right in its action in regard to the appellee's prayer, in submitting to the jury whether, under the circumstances given in evidence, the fence was or was not an obstruction to the *reasonable enjoyment* of his right of way by the appellee. It was a question of fact, and properly left to the jury for their determination.

3rd. The court was also right in its rejection of the appellant's prayer, because it takes from the jury the determination of the fact whether, under all the circumstances of the case, the erection of the fence on the banks of the race, by the appellant, was not an obstacle to the reasonable enjoyment of his right of way thereon by the appellee, to enter and clean out his race, and repair its banks.

Le Grand, C. J., delivered the opinion of this court.

This case is before this court for the third time. The former decisions in regard to it may be found in 7 *Md. Rep.*,

352, and in 13 *Md. Rep.*, 429. It is an action on the case for obstructing a road running from the mill of the appellee to his mill-dam, which dam, and the portions of the road obstructed, are on the land of the appellant. The particular damage alleged in the declaration, as resulting to the plaintiff from the obstruction placed in the bed and across the road, is thus described: "Whereby the said mill became, and was, during all the time aforesaid, idle and incapable of being worked, by reason of the said race and its banks being broken down and out of repair, so that the water could not flow through it from the same dam to the said mill, wherefore the plaintiff lost all benefit and profit, which otherwise he would have had and made from the working of the said mill, and the custom and trade thereof, and the use of the same for grinding his own grain, and was, therefore, at great expense, obliged to carry it to other mills, that is to say, at the county aforesaid, whereby the said plaintiff saith he hath damage," &c.

In the report of the first decision of this court in this case, the kind, extent and nature of the easement to which the plaintiff is entitled over the land of the defendant, are distinctly laid down. And, in the second decision, the kind of evidence on the question of special damage which is admissible, is pointed out.

Damages are claimed, because of the alleged obstructions, from the 27th day of August 1852.

After giving evidence of the titles under which the parties respectively claimed, the plaintiff offered to prove that the plaintiff was the owner of a large body of land around said mill, and that he was accustomed to grind his grain raised on said land at said mill for his cattle and horses as well as for the use of his hands and family, and that in consequence of the stoppage of said mill he had been compelled to carry his grain to another mill, at a greater distance. The defendant objected to the admissibility of this evidence, but the court overruled the objection and the defendant excepted.

We think the court properly overruled the objection to the admissibility of the testimony. It clearly related to the dam-

age alleged. Had the declaration in the case under con-sideration, been the same as that in the one reported in 13 *Maryland*, under the decision in that case it would have been inadmissible; but it is not, but broader and much more com-prehensive in its specification of damage.

The circuit court must also be sustained on the second ex-ception. The deposition of the witness Cecil, not being in the record, this court cannot be informed of its contents, and must, therefore, assume that it was properly admitted in evidence.

The plaintiff submitted a prayer which was granted, and the defendant another which was refused: to the granting of the one and the refusal of the other, the defendant excepted, and this constitutes the third exception.

Under the decision in 7 *Maryland*, the plaintiff's prayer is clearly error. It is due to the learned judge who granted it to say, that his ruling was before the case in 7 *Maryland* was made known to him. We attach no importance to the use of the words, "in a *reasonable enjoyment* and use of said bank," inasmuch as we regard such an use as the kind to which the plaintiff was entitled. In the decision in 7 *Mary-land*, it was held, that to enable the plaintiff to maintain his action, it was incumbent upon him to show, that the ob-struction of which he complained was a *material* one. If, therefore, it was of a character not to interfere with the *rea-sonable* enjoyment of the plaintiff of the use of the bank, it could not be a *material* obstruction to such use. In the con-nection in which they are used, the words must be taken as meaning the same thing. The error in the prayer, if the jury should believe the evidence of the defendant, consists in the fact, that the prayer authorises a recovery on the part of the plaintiff for the time subsequent to the removal of the obstruction, or rather its modification, so as to render it not a *material* one within the meaning of this court in 7 *Maryland*, 366. It was there said, "the plaintiff was not entitled to a ver-dict, if the jury believed the truth of the defendant's evidence in regard to the manner in which the road had been used, and in reference to the nature, character and structure of the ob-

structions, and the willingness and readiness of the defendant to have the obstructions removed, whenever the plaintiff had occasion to repair the dam and race, and that the plaintiff was informed of such readiness and willingness, and that he or his agents might remove them, if he or they thought proper to do so; which obstructions were so constructed as to be easily removed."

We are of the opinion the court improperly rejected the defendant's prayer. It merely denies the right of the plaintiff, *after* the 29th of July 1852, to recover damages for any obstruction. If the jury believed the evidence offered by the defendant as to the character of the fence, and as to the *notice* of the same given to the plaintiff, and the willingness of the defendant to remove the fence whenever he should be requested to do so, then the plaintiff was not entitled to recover for any alleged damage accruing after the 29th of July 1852, the time when the purpose of the defendant was communicated to the plaintiff.

*Judgment reversed and procedendo awarded.*

(Decided February 20th, 1861.)